We will dispense with the calling of the calendar. We have one motion to be argued. We'll hear that first. Thank you, Your Honors. This is Jim Dugan from Wilkie, Pharr, and Gallagher on behalf of Appellant Golden Tree Asset Management. Your Honors, I will be as brief as I can be. You have our papers. I'm sure you've read them and you're very well familiar with them. I'll try not to repeat them. I really just have three points I wanted to emphasize here today, Your Honors. One is my client is a holder of the A2 securities in Triaxx, so they're one level below South Trion, who is the appellee. My client will be irreparably harmed by the sale that the lower court has ordered must go forward, and the reason is really twofold. One is this is a sale of 80% of the assets in the Triaxx CDO. It's essentially most of the assets in the Triaxx CDO. If that sale goes forward— No other monetary remedy if that happens. Well, if that happens, Your Honor, the amount left will not really be worth the candle, if I may be frank, and so I think the appeal will be effectively mooted. In other words, the litigations at issue involve 46 securities in total, and most of those will be sold. Well, there's two things. One is the mooting of the appeal, which is a form of irreparable harm, as courts have held in this circuit, Your Honor. The other thing is that the litigation proceeds will be irreparably lost to my client. South Trion will receive the benefit of the sale largely. My client will take a loss on the sale. See, the fact—in order to show a likelihood of success or the fact that the denial of a stay would be a problem for you, you have to show that you would likely prevail on the merits, the contractual question here, and that's a hurdle that you have to face. Thank you, Your Honor. I think there is a sliding scale, as this court has held in FAPA v. Gonzales and other cases. Still, the parts are still in there, even though one being higher, the other doesn't have to be higher. Correct. They both have to be, just to some extent. Correct, but I think the standard that we are under here, Your Honor, is there a substantial question going to the merits. I say that because I believe we have demonstrated irreparable harm. We will lose the benefit of the litigation proceeds once these securities are sold. My client will take a loss on this, and it will not be able to repair that loss through any other means of recourse. The substantial question going to the merits, Your Honor, in this case, is whether the commercially reasonable efforts reflected in the indenture must be read to give the collateral manager some discretion to effect a sale. The sale, in this case, the lower court has ordered— That's the term. But does it, in your argument, give him discretion? No. That's a little different. Well, Your Honor, I think it gives him discretion. It gives the collateral manager discretion. In the face of mandatory contractual language that he must sell. Your Honor, I think that mandatory language does have a proviso. It basically says that upon direction of the collateral manager, the issuer shall sell. The collateral manager must direct. The issuer upon that must sell. But the collateral manager's direction is imbued with his commercially reasonable judgment. That is clear under the collateral management agreement. That language of commercial— Some discretion. Your Honor, that's what I'm saying. Some discretion. The fire sale that has been judicially ordered here will have to take place without any reserve price. There will be no ability to set afloat, and that will damage my client irreparably. Your Honor, the only other thing I would add is I don't think South China has shown that they would be harmed if this stay would be granted. Okay? Thank you. We'll hear from your colleague. Oh, that's fine. Well, we usually don't have rebuttal on motions. Go ahead. Go now. Your Honors, I'd like to address the questions Judge Walker was bringing up about the likelihood of success. And there's no question that there's mandatory language. In fact, there's mandatory language that pervades every particular provision here. And you have what is basically a clash or a conflict between several key provisions. In the indenture, it says you shall sell using commercially reasonable methods. In the collateral management agreement, which is integrated, it says consistent under all the obligations with respect to the collateral manager's duties under both the indenture and the collateral management agreement, the collateral manager has to exercise not only his behavior in a commercially reasonable manner, he has to exercise a duty of skill and attention that he would bring to his own assets. And the collateral management agreement is very specific that that duty of skill and the exercise of commercially reasonable judgment must be applied with respect to every act it performs under both agreements. And Judge Pauly read the standard of care language and the commercially reasonable language out of the agreement merely because it says you shall sell. But those shall sell is subject to all the other terms, and that is what creates the— Well, he didn't read it out. If it's dealing with method of sale, they're operative. They have their full force if it's the method of sale. If you would like to construe it as to whether or not there should be a sale, then you could argue that he's read it out, but maybe he hasn't because that only applies to method. But with all due respect, Your Honor, the method of sale embraces more than merely whether you post it on an Internet site, the BWICs, to get them listed for sale. It's not only the manner in which you sell it, but it's the terms in which you offer it. It doesn't just say shall sell. It says shall sell within three years. So it's hard to see wiggle room there in terms of the three years. Absolutely, Your Honor. It doesn't say three years subject to commercially reasonable circumstances. For sure. And TRIAC's asset management's position is not that the securities should not be sold, but that it should be able to sell them in the manner that captures the value that's inherent to those securities for the benefit of all note holders as it's specifically charged to do under the agreement. What do you think about that? Are you saying when you can get a better price? If the reserve price, for instance, that the collateral manager proposes installing is not hit the first time, then we try again where we can get a better price, yes, Your Honor. Not that we sit idle, but that we maximize sale. But there's no time limit then under those circumstances. It depends on the market. To some extent, that's right, Your Honor, and that's consistent with the duty that's specifically set forth in the agreement that says you're supposed to maximize all management of the collateral to ensure a timely performance of all payment obligations under the indenture, and that means payments to the other classes, not merely South Tryon. Thank you. We'll hear from you. Thank you, Your Honor. Good morning, Your Honors. John Pickard from Quinn Emanuel, Urquhart & Sullivan on behalf of the appellee, South Tryon. Your Honors, all of the arguments that are being presented to this court were also presented to the district court. The district court considered them thoroughly and carefully and rendered a very well-reasoned determination that the contractual provisions here are kind of used to the arguments already being presented to the district court. It's the nature of our business. Fair enough, Your Honor. But the district court literally spent hours with the parties arguing to it all of these arguments in great detail, and the district court concluded that the contractual provisions here are straightforward and unequivocal, and as the U.S. Supreme Court recognized in Ken, that's the most critical factor for the court to consider in determining whether to grant a stay. What is the harm to you? The harm to us, Your Honors, it actually deprives us of the very purpose of this provision. As the district court properly found, a provision requiring that assets be sold within three years and including the type of mandatory language that Judge Chin recognized, the purpose of that is to protect the senior investors from risk of deterioration in the value of the assets. These assets should have been sold over a year ago, and we have been working diligently to get them sold to protect ourselves against the risk of diminution of value. Now, because of the legal process, that has been delayed a year, and if the stay was granted, it would be delayed into next year, which would undermine the very purpose of this provision. In addition— Of course, they're betting on an increase in value. Well, Your Honor, anyone can look— You're hedging against the risk of diminution. Well, Your Honor, they certainly cannot sit here and say that asset prices are going to be higher next year than they are this year. That's the whole reason why you have these sorts of provisions, is because no one knows what's going to happen to these asset prices. In addition, as the court recognized in LNR and Judge Rakoff found, the fact that if these assets were sold and we would receive the cash from those sales, my client should have already had the opportunity to reinvest those proceeds as it saw fit in its business. As of now, those proceeds are locked up in the structure, and so they also are being deprived of the ability to invest those proceeds. And so there are both forms of harm that the district court properly found applied to my client. On the other hand, the district court also properly found that any claim of harm to the appellants was speculative. What they are claiming as being harm is that they are going to lose the proceeds from certain litigations, and it's actually five filed litigations that they are claiming they will lose the proceeds from. How do you respond to the argument that implicit in the language is a requirement that the sale be done in a commercially reasonable manner, and now is simply not a commercially reasonable time to do it? Your Honor, the provision is very clear that there are certain ways that this sale is to occur, and the provision in Section 12.1b says that the manager shall solicit bona fide bids from three approved dealers and also provides that the manager shall sell the security to the highest bidder, and it also provides that all of that shall happen within three years. Now, there are other factors related to the process for sale that the manager has discretion. For example, are they going to list the assets for sale between Christmas and New Year's? That would not be commercially reasonable because that would not be a time of the year when it is going to garner attention. So there are some things that are allowed, the manager is given discretion to determine, but it certainly is not given discretion to undermine the steps that are described in mandatory terms. And as the district court looked at, there are permissive provisions under Section 12.1a2. So this provision says that the assets shall be sold within three years. There are other provisions that say may sell. If the court were to conclude that the manager, upon its discretion, could just decide to not sell these assets because it thought next year the markets were going to go up as opposed to going down, it would be to completely undermine and rewrite the contract in turn. That's inconsistent with the structure of the contract. That's exactly right, Your Honor. And it would – And the risks that each of the parties took on. It would turn shall into may, and when the contract uses the word shall in some instances and uses the word may in other instances, that should be respected. What your basic point is is that this is what was bargained for. This is what the parties bargained for when they all entered into this contract. That's absolutely right, Your Honor. And as the district court found, these were protections for my client. My client is the senior holder in this structure. They receive the lowest interest rate of anybody in this structure, and so they have special protections. It is not fair for junior holders, when those protections kick in, to come in and say, well, the manager should have the discretion to override the very protections that were afforded to my client. Thank you. Thank you. We'll reserve decision.